679 P.2d 640

Calvin C. JOHNSON, Plaintiff-Appellant, Cross-Respondent,

v.

ALLIED STORES CORPORATION, d/b/a The Bon Marche, Defendant-Respondent, Cross-Appellant.

No. 14330.

Supreme Court of Idaho.

March 15, 1984.

---

William L. Mauk, of Skinner, Donnelly, Fawcett & Mauk, Boise, for plaintiff-appellant cross-respondent.

Thomas V. Munson, and Richard C. Fields, of Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-respondent cross-appellant.

DONALDSON, Chief Justice.

In this case, both parties have appealed from a partial summary judgment granted by the district court. Appellant's original complaint contained two counts, each sounding in contract and based on appellant's termination from respondent's employ.

Count I stated a cause of action for respondent's denial of severance pay allegedly owed to appellant. Appellant appeals from the district court's dismissal of Count I on respondent's motion for summary judgment.

Count II stated a cause of action for respondent's denial of the executive discount privilege, also allegedly owed to appellant. Respondent cross-appeals from the district court's denial of respondent's motions for summary judgment and directed verdict on Count II.

In addition, appellant seeks review of the district court's award of costs to the parties.

We reverse the district court's dismissal of Count I, and remand this count for a determination of whether a contract existed and, if so, for a computation of the severance pay that appellant is entitled to receive, in accordance with this opinion. We affirm the district court's denial of

**366**

summary judgment and directed verdict on Count II. Lastly, we remand the assessment of costs pertaining to Count I in accordance with our instructions herein.

Calvin Johnson (appellant) was an employee of Allied Stores Corporation, d/b/a The Bon Marche (respondent), continuously from March 1, 1949, until his termination on October 10, 1977. Based on his termination, appellant filed an action against respondent in ·August of 1979. Appellant's complaint .contained two counts, both pertaining to particular benefits contained in respondent's policy manuals to which appellant claimed entitlement.

In Count I, appellant maintained that, as a part of the contract of employment with respondent, upon appellant's termination he was entitled to receive severance compensation at the rate of two weeks of his then average base salary for each year of service. Appellant claims that his entitlement is based on a personnel policy adopted by respondent in 1962, even though that policy was subsequently changed prior to appellant's termination.

In Count II, appellant alleged that respondent had wrongfully denied appellant use of the executive discount privilege. Pursuant to this privilege, qualified employees may purchase merchandise at respondent's stores at a reduced rate after retirement.

Respondent moved for summary judgment, alleging that (1) as to both counts, no contractual relationship existed between the parties which supported a claim of entitlement for either the severance pay, as computed by the 1962 policy manual, or for the executive discount privilege; (2) as to Count I, any contract which did exist was modified by later policy revisions; and, (3) Count I was barred by the six-month statute of limitation contained in I.C. § 45–608.

The district court granted respondent's summary judgment motion on Count I, holding that appellant's claim was barred by the six-month statute of limitation contained in I.C. § 45–608. However, the trial court denied summary judgment on Count II.

At the conclusion of trial on Count II, the jury specifically found in its special verdict that (1) there was a contract allowing for retention of the executive discount privilege upon appellant's termination; (2) appellant qualified for the privilege following his termination; (3) appellant was entitled to $6,889.00 for past loss of use of the privilege; and, (4) future losses that appellant would incur as a result of the prospective denial of the privilege could not be calculated. Thus, the district court awarded appellant's requested alternate relief, specific performance, whereby respondent was ordered to extend this privilege to appellant and his spouse. After trial on Count II, the district court denied (1) respondent's motions for a new trial, judgment notwithstanding the verdict, and attorney fees; and, (2) appellant's motion for attorney fees. The court apportioned costs between what it characterized as two prevailing parties, and denied appellant's request for discretionary costs.

Appellant appeals from dismissal of Count I and claims that the trial court's apportionment of costs and denial of his discretionary costs were erroneous. Respondent cross-appeals from the district court's denial of his motions for summary judgment and directed verdict on Count II.[1]

I.

COUNT I

The first question presented to this Court is whether Count I comes within the

**1.** Respondent further contends that appellant's claim for damages for the prospective loss of the executive discount privilege is so remote and speculative, that such damages are not properly awardable. However, appellant's prayer regarding the loss of the prospective use of this privilege was made in the alternative. Appellant sought either specific performance for the prospective use of the privilege, or money damages equivalent to the value of the privilege projected over the reasonable life expectancy of appellant. The jury stated they were unable to calculate the value of the prospective loss of the privilege, and thus, the court awarded appellant's alternative request, specific performance. We affirm the trial court's award of specific performance. Hence, respondent's contention is without merit.

ambit of I.C. § 45–608 and, if so, which limitation period of that section applies. I.C. § 45–608 reads as follows:

"**45–608. Collection of wages—Limitations.**—Any person shall have the right to collect salary, wages, overtime compensation, penalties and liquidated damages provided by any law or pursuant to a contract of employment, but any action thereon shall be commenced in a court of competent jurisdiction within two (2) years after the cause of action shall have accrued, provided, however, that in the event salary or wages have been paid to any employee and such employee claims additional salary, wages, overtime compensation, penalties or liquidated damages, because of work done or services performed during his employment for the pay period covered by said payment, any action therefor shall be commenced within six (6) months from the accrual of the cause of action. It is further provided that if any such cause of action has accrued prior to the effective date of this act, and is not barred by existing law, action thereon may be commenced within six (6) months from the effective date of this act. In the event an action is not commenced as herein provided, any remedy on the cause of action shall be forever barred."

■ We previously held in *Thomas v. Ballou-Latimer Drug Co.*, 92 Idaho 337, 442 P.2d 747 (1968), that a claim for an employee bonus, which was calculated by reference to the net profit of the defendant company and paid yearly, was part of the compensation bargained for in the agreement of employment. Because the bonus was part of the bargained for compensation, we held that a bonus claim came within the parameters of I.C. § 45–608. By analogy, a claim for severance pay is also a component of the compensation in an employment agreement. Severance pay is not a mere gratuity. *Owens v. Press Publishing Co.*, 20 N.J. 537, 120 A.2d 442 (1956). Thus, we hold that a claim for severance pay also comes within the parameters of I.C. § 45–608.

■ I.C. § 45–608 contains two periods of limitation. Therefore, it is necessary to determine which limitation period applies to the case at bar, and whether appellant's claim is barred by its application. Generally, an action to collect salary, wages, overtime compensation, penalties and liquidated damages provided by law or pursuant to a contract of employment, must be commenced within two years after the accrual of the cause of action. The statute then specifies that the action must be commenced within six months of the accrual of the cause of action, "in the event salary or wages have been paid to any employee and such employee claims additional salary, ... because of work done ... during his employment for the pay period covered by said payment." A careful reading of this language, convinces us that a claim made in the text of the above-quoted material, refers to a claim for additional salary for a *specific pay period* from which an employee has already received some payment of salary or wages. The introductory language to this section contained in the Idaho Session Laws specifically refers to a pay period in the context of the six-month limitation period as well. 1947 Idaho Sess. Laws ch. 36, pp. 36–7.

■ Contrary to respondent's assertion, the term pay period does not refer to the entire course of an employment relationship. Because severance pay is not attributed to, or earned in a specific pay period, but, is earned over the entire course of the employment relationship, the six-month limitation period is inapplicable to appellant's claim for severance pay. Rather, the two-year period is applicable.

■ A cause of action accrues under this section when an employee has a right to collect the salary or wages, etc., that are allegedly owed to him. In the present case, appellant had a right to collect his severance pay upon either his retirement or involuntary termination. Appellant was terminated from his employment on October 10, 1977, which is when the cause of action accrued. Appellant initiated this suit on August 21, 1979, which is less than

two years from the accrual of this cause of action. Thus, appellant's claim is not barred by the two-year limitation period of I.C. § 45–608. Therefore, we reverse the district court's dismissal of Count I.

Our reasoning today is consistent with our previous holding in *Anderson v. Lee,* 86 Idaho 300, 386 P.2d 54 (1963), where we held that the six-month limitation period does not apply to a payment made on account, because no particular pay period was covered by such payments.

■ Because Count I is not barred by the two-year limitation period of I.C. § 45–608, it becomes necessary to determine the amount of severance pay that appellant is entitled to receive. The amount of severance pay that appellant is entitled to receive rests upon the resolution of two issues: first, whether the trier of fact determines that a contract existed between the parties by virtue of the 1962 policy manual, and second, if such a contract exists, whether the contract was later modified.[2]

The parties dispute whether an enforceable contract existed between them which specified the amount of severance pay that appellant is entitled to receive. When the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists. *Pre-Fit Door, Inc. v. Dor-Ways, Inc.,* 13 Ariz.App. 438, 477 P.2d 557 (1970); *Segura v. Molycorp, Inc.,* 97 N.M. 13, 636 P.2d 284 (1981). This Court has stated that "[g]enerally the determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of facts." *Glenn v. Gotzinger,* 106 Idaho 109, 675 P.2d 824 (1984) (quoting *Shields & Co. v. Green,*

100 Idaho 879, 882, 606 P.2d 983, 986 (1980)). *See also Steele v. Harrison,* 220 Kan. 422, 552 P.2d 957 (1976).

Assuming a contractual relationship existed between the parties, it becomes necessary to determine whether a valid modification of that policy was effected in 1971, and again in 1976. By the terms of the 1962 policy manual, an employee could earn as much as 2-weeks pay for every year of employment in the event of involuntary severance. In 1971, the 1962 policy manual was allegedly modified by the employer to provide only one week of severance pay for every year of service. In 1976, the employer again allegedly modified the policy by imposing a ceiling on the total amount of severance pay recoverable to a maximum of twelve weeks.

■ "Whether a contract has been modified by the parties thereto is ordinarily a question of fact for the trier of fact, as where the evidence is conflicting or the terms of the agreement are equivocal or uncertain." 17 Am.Jur.2d *Contracts* § 465 (1964) (footnote omitted); *See Molyneux v. Twin Falls Canal Co.,* 54 Idaho 619, 35 P.2d 651 (1934). Conversely, where it is contended that a contract has been modified, and the evidence relating to the modification is undisputed and unambiguous, the trial court must decide as a matter of law whether the contract was modified. *Smith v. Washburn-Wilson Seed Co.,* 54 Idaho 659, 34 P.2d 969 (1934); *W.T. Rawleigh Co. v. VanDuyn,* 32 Idaho 767, 188 P. 945 (1920).

■ The trial court did not receive evidence on either the issue of the existence of a contract, or its modification because

---

**2.** The precise date that respondent began offering both severance pay and the executive discount privilege was not determined during discovery or at trial. While these benefits existed before they were incorporated formally in a policy manual, the 1962 Personnel Manual was produced as the earliest copy of a published personnel policy still yet available for review, which incorporated these benefits.

Appellant relied upon the 1977 Policy Manual at the trial on the discount privilege. Apparent-

ly, all existing policies regarding the discount privilege appeared virtually the same. The jury determined that a contract existed between the parties with respect to the executive discount privilege.

No finding has ever been made as to whether a contract existed between the parties by virtue of the 1962 Policy Manual severance pay provisions. Thus, this issue is remanded to the trial court.

the court dismissed Count I on respondent's motion for summary judgment. The resolution of these issues are necessary to the determination of the amount of severance pay that appellant is entitled to receive. Thus, we remand these issues, and the issue of the amount of severance pay that appellant is entitled to receive, to the trial court.

 In the event the trial court determines that a valid contract existed between the parties by virtue of the 1962 policy manual, and the later modifications are upheld, it is the opinion of this Court that a contractual right to severance pay creates an obligation in the employer to furnish the severance pay due to the employee under the contract. This obligation does not cease upon termination or modification of the contract. Subsequent modifications are effective prospectively only.

We base this holding on *Owens v. Press Publishing Co.*, 20 N.J. 537, 120 A.2d 442 (1956), which correctly states the status of contractual rights to severance pay. In *Owens,* the suit was brought by discharged employees against an employer to recover severance pay allegedly due under an expired collective bargaining agreement. The court held that the severance pay was a form of compensation and thus, survived the termination of the agreement. "Of course, the right to such pay can 'arise' only during the subsistence of the contract so providing, and not after its termination; but once the right thus comes into being it will survive the termination of the agreement." *Id.* at——, 120 A.2d at 448. In view of this principle, the *Owens* court stated that "[w]hen the contract under which the right to severance pay arose expired of its own limitation, the right itself came to an end save as to the pay that had accrued during the contract term." *Id. See also International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Defiance Industries, Inc.,* 251 F.Supp. 650 (N.D.Ohio 1966) (severance pay may survive the termination of the collective bargaining agreement on basis that employees have earned deferred compensation during the term

of the contract); *Gebhard v. Royce Aluminum Corp.,* 296 F.2d 17 (1st Cir.1961) (modification may not affect accrued matters). In accordance with these principles, under the 1962 Policy Manual, appellant's severance pay accrues annually, at the end of each anniversary date of employment, up until appellant's termination or retirement. If however on remand, the trial court determines that the 1962 Policy Manual was effectively changed in 1971, then appellant's severance pay shall accrue thereafter in accordance with the 1971 policy.

## II.

### COUNT II

Count II of appellant's complaint stated a cause of action for respondent's denial of the executive discount privilege allegedly owed to appellant. Respondent cross-appealed from the district court's denial of respondent's motion for summary judgment as to the executive privilege claim, and from the denial of respondent's motion for a directed verdict at the close of trial on that claim. Respondent submits that these rulings constitute reversible error because no enforceable contractual relationship existed between the parties regarding the executive discount privilege.

 As we have previously stated, whether a contract exists between the parties is a question for the trier of fact. Moreover, we have stated in *Ryals v. Broadbent Development Co.,* 98 Idaho 392, 394, 565 P.2d 982, 984 (1977), that

"[one] of the most basic precepts in our system of jurisprudence is that determinations of fact by a jury will not, except in extraordinary circumstances, be overturned by the court, trial or appellate, if there is substantial evidence sustaining those factual findings. In addition, such deference has been the abiding rule in Idaho with respect also to dismissals of complaints, summary judgments, judgment on the pleadings, nonsuits, directed verdicts and judgments notwithstanding the verdict. *See* IRCP 12(b), (c), 41(b),

50(a), (b), 56; *Bank of Commerce v. Baldwin,* 12 Idaho 202, 85 P. 497 (1906); *Hendrix v. Twin Falls,* 54 Idaho 130, 29 P.2d 352 (1934)."

We have reviewed the record and find there is substantial evidence to sustain the factual findings of the jury: (1) that there was a contract allowing for retention of the executive discount privilege upon appellant's termination; and, (2) that appellant qualified for the privilege following his termination. We affirm the holding of the district court denying respondent's motions for summary judgment and directed verdict as to the executive discount privilege.

### III.

### COSTS

Lastly, appellant contends that the district court erred in apportioning costs between the parties and in denying appellant's request for discretionary costs. The trial court stated that because both parties prevailed upon significant aspects of the case, the case was appropriate for apportioning costs. "The court elected to allow each party its costs as a matter of right as if that party had prevailed in an independent lawsuit." Furthermore, the trial court stated that because both parties also lost a portion of the lawsuit, the court required "the parties to bear those items of costs not mandated by the Supreme Court" and thereby denied all discretionary costs.

 We do not need to reach this issue in view of our holding today. Because we reverse and remand Count I, the costs may need to be reassessed depending upon who prevails on this count. The prevailing party will be entitled to those costs granted as a matter of right pursuant to I.R.C.P. 54(d)(1). Appellant may then reassert his request for discretionary costs.

In the event respondent is again found to be the prevailing party on remand of Count I, we affirm the district court's apportionment of costs between what the court originally characterized as two prevailing parties and affirm the denial of appellant's request for discretionary costs.

We have previously held that a "trial court is vested with broad discretion to determine the prevailing party in a multiple claim action." *International Engineering Co. v. Daum Industries, Inc.,* 102 Idaho 363, 366, 630 P.2d 155, 158 (1981). We find no abuse of discretion in either the manner of apportionment or in the denial of discretionary costs in the event it is again determined that respondent is the prevailing party on Count I. Consistent with our holding as to Count II herein, appellant is the prevailing party on this count and as such, the costs awarded as to Count II are hereby affirmed.

No costs on appeal.

No attorney fees on appeal.

SHEPARD and BISTLINE, JJ., and McFADDEN, J., protem., concur.

BAKES, J., concurs in the result.